# JONES DAY

555 CALIFORNIA STREET, 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE: +1.415.626.3939 • FACSIMILE: +1.415.875.5700

Direct Number: (415) 875-5820
jmcdonell@JonesDay.com

November 28, 2012

The Honorable Magistrate Judge Elizabeth D. Laporte
Northern District of California
450 Golden Gate Avenue
Courtroom E - 15th Floor
San Francisco, CA 94102

Re: *Shionogi & Co., Ltd. v. InterMune, Inc.*, Case No. 3:12-cv-003495-EDL – Joint Letter Brief Regarding Production of Translations

Dear Magistrate Judge Laporte:

The Court requested at the November 13, 2012 Case Management Conference that the parties submit a joint letter brief setting forth their respective positions regarding Shionogi's production of translations. *See* ECF No. 34 (Civil Minutes). InterMune contends that Shionogi should produce the translations that it has in its possession at the time of production. Shionogi contends that translations created at the direction of counsel and in furtherance of preparing Shionogi's case are protected from disclosure by the attorney work product doctrine.

## I. Shionogi's Position

The fundamental issue is whether the selection of key documents by Shionogi's litigation team loses work product protection merely because Shionogi's documents generally are in Japanese, as opposed to English. InterMune attempts to frame the dispute as a translation issue in order to obscure what it is really seeking – a unilateral requirement that Shionogi identify those documents its counsel finds significant.

InterMune's position is one-sided, and, if accepted, would result in a blanket rule applicable to any case in which foreign language documents are discoverable. InterMune conceded in response to the Court's questioning that it generally does not possess foreign language documents. *See* ECF No. 35 (Transcript of Proceedings) at 5:11-15. As a result, a rule requiring production of translations requested by counsel would create a serious disadvantage for Shionogi and produce windfall benefits for InterMune. It is thus transparent why InterMune is pushing this point.

Ninth Circuit law and the weight of authority in other circuits establish that an attorney's selection and compilation of documents constitute attorney work product. *See United States v. Richey*, 623 F.3d 559 (9th Cir. 2011) ("The work-product doctrine covers documents or the compilation of materials prepared by agents of the attorney in preparation for litigation."); *see*

SFI-784374v1

ALKHOBAR • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DUBAI
DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 2

*also In re Grand Jury Subpoenas*, 318 F.3d 379 (2d Cir. 2003); *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985); *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986); *Fleischman v. McDonald's Corp.*, 244 F.R.D. 434 (N.D. Ill. 2002); *Hunter's Ridge Golf Co., Inc. v. Georgia-Pacific Corp.*, 233 F.R.D. 678 (M.D. Fla. 2006); *Plant Genetic Sys., N.V. v. Northrop King Co.*, 174 F.R.D. 330 (D. Del. 1997); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138 (D. Del. 1982). InterMune's position seeks to read an exception into this well-established law merely because the documents are written in Japanese. The work product doctrine, and the principles behind it, make clear that InterMune's proposal must be rejected.

### (A) The Selection and Compilation of Documents at the Request of Shionogi's Counsel for Translation Qualifies as Attorney Work Product

The attorney work product doctrine codified in Federal Rule of Civil Procedure 26(b)(3), protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989). The doctrine is commonly understood to create two categories of attorney work product. The first category – opinion work product – consists of mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative. Such types of work product are accorded near absolute protection. *Sporck*, 759 F.2d at 316 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981); *In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d Cir.1979)); *see also* Fed. R. Civ. P. 26(b)(3)(B). The second category – ordinary work product – contains all other documents or tangible things created in anticipation of litigation. Such types of work product are discoverable only on a showing of substantial need and undue hardship. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii).

### (1) Very Few Translated Documents Exist Other than Those Selected Pursuant to Jones Day's Instruction

During the course of discovery, Shionogi will review millions of pages of Japanese language documents for possible production. If counsel for Shionogi selects for translation a small fraction of those documents that appear to counsel to have some particular significance, production of those translations will effectively disclose counsel's mental impression to the opposing side. The Court asked Shionogi to investigate whether a large number of documents exist that were translated independent of counsel's instruction because the production of a significant number of translated documents not selected by counsel would make translated documents less indicative of counsel's mental impressions. After a reasonable inquiry, Shionogi believes that few documents would have been translated in the ordinary course because its business is conducted in Japanese. Documents are translated by Shionogi to the extent they are intended for an international, outside audience (for example a presentation at a conference).[1]

---

[1] Shionogi does not object to the production of these pre-existing translations.

SFI-784374v1

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 3


Although InterMune translated Shionogi's clinical data for submission in Europe, this category of documents was selected by InterMune (not its litigation counsel) for translation and thus does nothing to blur the line between documents selected for translation by Shionogi's business persons and its counsel.

Through their collection process, Shionogi and Jones Day have identified millions of pages of documents that may relate to this dispute. Shionogi has retained several bilingual U.S.-admitted attorneys to review these documents.[2] Pursuant to instructions from Jones Day, these first-level reviewers are identifying documents for responsiveness, privilege, significance ("Hot"), and other categories created by Jones Day's litigation team. A second group of bilingual U.S.-licensed attorneys, including bilingual Jones Day lawyers, are performing a second-level, quality control review of a sample of documents to ensure that review and production protocols are followed. The bilingual Jones Day attorneys that are part of the second-level review team currently also review other categories of documents, including all documents that are tagged as "Hot." Upon review of a "Hot" document, a bilingual Jones Day attorney will prepare a privileged legal and factual analysis of the document for consideration by the litigation team.[3] Only after members of the U.S.-based litigation team consider the strategic analyses of the "Hot" documents will they decide whether to translate the document.

InterMune's assertion that "Shionogi has gone out of its way to design a review and production process that . . . avoid[s] facilitating InterMune's review of its documents" is simply not true. Jones Day attorneys based in the United States frequently work with foreign Jones Day offices, including Jones Day attorneys in Tokyo, on document productions. Jones Day has global resources, unavailable to most firms, to manage multi-language cases efficiently by narrowly tailoring those documents that require translation. The process outlined above was not designed to avoid InterMune's review of documents, but to efficiently and effectively fulfill Shionogi's discovery obligations. By using native English speaking, U.S.-admitted, Jones Day attorneys who are also proficient in Japanese, Jones Day has greatly reduced the need to translate documents for quality control purposes. Jones Day's ability to use attorneys from its

---

[2] Although the current first- and second-level reviewers are attorneys admitted to practice in the United States, for the reasons stated in the joint case management report, *See* ECF No. 34 at 4:21-28, Shionogi reserves the right to use non-U.S.-licensed attorney reviewers as well, and to otherwise modify the process described herein as dictated by the progress and demands of the actual review. Shionogi does not, as InterMune asserts, intend to "change this process in its entirety after the Court rules on the present dispute." *See infra* Part II.

[3] Jones Day's use of the term "litigation team," identifies those attorneys that will appear before this Court. InterMune's assertions that the litigation team has intentionally removed itself from the document review process, *see infra* Part II(A), is disingenuous. Native English speaking Jones Day attorneys, who are Japanese literate, are closely involved in the quality control process and are conducting the second-level review. While these attorneys are licensed in the United States, they are not admitted to practice in the Northern District of California, and therefore not part of the litigation team. The use of such attorneys is indistinguishable from InterMune's use of attorneys from the Cravath firm that have not been admitted *pro hac vice*.

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 4

international offices to assist in the document review is precisely why the translation of documents at issue is so critical. Because the documents will be reviewed in their native language, wide scale translations will not be created during the document review process. Therefore, contrary to InterMune's argument, the translations of "Hot" documents will not be "subsumed" among "the various translations that wind up getting prepared during the document review process." See infra Part II(A).

As of filing, a fraction of 1% of documents[4] identified as responsive, have also been tagged as "Hot." No analysis of any of these documents has yet been completed. Accordingly, none of the documents have been designated for translation.

InterMune acknowledges that this is not "a run-of-the-mill case," and so it is not surprising that the indiscriminate mass translation process applied in other cases (whether automatic or manual) will not be used in "a case involving Japanese-language documents relating to clinical studies of a drug used to treat a rare lung disease." As is apparent from the above description of the document review protocol, InterMune has incorrectly assumed that "a large percentage of the documents that Shionogi ultimately produces [must be translated.]" *See infra* Part II(A). Rather, Shionogi's counsel has developed a more refined process that anticipates that a small portion of the overall document production will require translation.

For this reason, the cases cited by InterMune are inapplicable here. The cases on which InterMune relies address widespread translations that occur early on in the discovery process, when attorneys are attempting to "cull through" volumes of data. *See Plant Genetic Sys., N.V. v. Northrop King Co.*, 174 F.R.D. 330, 332 (D. Del. 1997) (addressing whether translations made as "part of a culling process" qualify as attorney work product); *see also In re Air Crash Disaster Near Warsaw, Poland*, No. MDL 787, 1996 WL 684434, at *2 (E.D.N.Y. Nov. 19, 1996) (holding that documents that only reflect what an attorney "considered worth reading" was not work product). In fact, although the *Plant* court required the production of one line "summaries"

---

[4] InterMune's assertion that the document review process is still in its infancy is misleading. *See infra* Part II(A). Shionogi began its document collection in October, and its review of documents on November 6, 2012. While counsel noted during the November 13, 2012 case management conference that Shionogi was just beginning its review, *see* ECF No. 35 at 10:4-6, consistent Fed. R. Civ. P. 1, Shionogi has moved forward to efficiently and expeditiously review documents pursuant to InterMune's discovery requests as well as to design and implement its second-level review protocol. Tens of thousands of documents have now been reviewed and coded in response to InterMune's First Set of Requests for Production, which were served on Shionogi October 18, 2012. In contrast, Shionogi served its discovery requests on InterMune a full month earlier, on September 18, 2012, but InterMune has yet to conduct any review, and took no steps to solve the alleged barriers to complying with its discovery obligations such as identification of custodians or search terms until Shionogi raised these issues. InterMune also will not commit to a date to start production of documents not subject to objections. InterMune should not be permitted to ignore and/or delay its own discovery obligations, and then to benefit from Shionogi's diligent efforts.

SFI-784374v1

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 5

of documents,[5] the court explained that a smaller set of full-length translations "consider[ed] important enough to be translated into English for the benefit of the Court or a jury" would be protected under the work product doctrine. *See Plant*, 174 F.R.D. at 332.

Shionogi is not creating translations during the "culling" process. Rather, these translations are created only *after* three distinct groups of attorneys have evaluated the document, and determined the legal and factual significance of each individual document. Accordingly, these documents are much more comparable to the category that the *Plant* court identified as deserving of work product protection. *See id*. The full-length translations are integral components of Shionogi's theory of its case and indicate important information relating to how Shionogi's trial team plans to litigate the dispute. Production of such translations creates a "real, rather than speculative concern that counsel's thought processes" will be compromised. *See In re Grand Jury Subpoenas*, 318 F.3d 379, 386 (2d Cir. 2003).

Moreover, InterMune's proposal is vague and practically unworkable. Indeed it may generate future discovery disputes or possibly require the production of documents that even InterMune concedes are protected as work product. InterMune requests that all translations existing "at the time of production" be produced. Multiple versions of the same or substantially similar documents may exist. As a result, it is realistic that a scenario may arrive whereby a translation does not exist at the time a document is originally produced, but is created several months later. Where other versions of the document are produced post-translation, it appears that InterMune will assert that Shionogi would have to compare each version of a document to determine if a corresponding translation is in its attorneys' files. Further, Shionogi expects to make a rolling production, and because the parties have not yet identified all twenty of their custodians, production could continue for months, including up to, and after, the commencement of depositions. Accordingly, the line InterMune is attempting to draw, if ever valid, will likely create additional work and disputes, or result in production of translations that InterMune itself acknowledges are protected work product because they were created after a document was initially produced in preparation for depositions or other more advanced stages of discovery.

---

[5] At the outset, InterMune stated that only actual translations, not summaries of documents, were at issue in this translation briefing. Nonetheless, after close of business on November 27, 2012, InterMune provided an updated draft that appears to seek summaries by Shionogi, while protecting its own summaries. *See infra* note 12. Relying on *Plant*, InterMune, now argues that summaries should be produced because the *Plant* court required such production "even though summaries were prepared for only 3.2% of the documents that were reviewed." *See id* (citing *Plant Genetic Sys.*, 174 F.R.D. at 321). While Shionogi does not currently intend to create the single line summaries that were at issue in *Plant*, if summaries could be subject to production, Shionogi requests the opportunity to brief the issue at a later date in light of InterMune's eleventh hour change of position.

SFI-784374v1

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 6

### (2) Counsel's Selection and Compilation of Important Documents Qualifies as Opinion Work Product Protected from Disclosure

The documents InterMune seeks would reveal counsel's mental impressions, opinions, and conclusions regarding Shionogi's legal claims, and should be afforded near absolute protection. As previously described, bilingual attorneys are currently reviewing voluminous Japanese-language documents. Those documents that the reviewing lawyer identifies based on instructions from Shionogi's litigation counsel at Jones Day will be compiled together with analysis by a bilingual Jones Day lawyer, and then the Jones Day litigation team will select for translation those documents that counsel concludes are significant and may be used by counsel in preparing Shionogi's case. Courts routinely hold that an attorney's compilation of documents in such a manner is protectable opinion work product. *Sporck v. Peil*, 759 F.2d at 316 (holding that the "selection and compilation of documents by counsel . . . falls within the highly-protected category of opinion work product"); *Shelton v. Am. Motors Corp.*, 805 F.2d at 1329 (holding that attorney's selective review of documents was based upon professional judgment of the issues and defenses involved); *James Julian*, 93 F.R.D. at 144 (discussing critical importance of safeguarding counsel's identification of significant documents and reasoning that the exercise of identifying key documents is more critical than legal research in document-intensive cases). Undoubtedly, InterMune's counsel will have a similar process to identify key documents, and would maintain its compilation is absolutely protected.

As opinion work product, the selected documents should be "accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases." *See Sporck*, 759 F.2d at 316 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981); *In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d Cir.1979)).

For example, in *Sporck*, the defendant's attorney prepared the defendant for his weeklong deposition by reviewing with him a folder of key documents the attorney had selected and compiled. The defendants already had produced each of the individual documents in responses to plaintiff's discovery requests. At the inception of the deposition, plaintiff's counsel asked the defendant "in preparation for this deposition, did you have occasion to examine any documents?" *Sporck*, 759 F.2d at 313-14. The defendant answered affirmatively, leading plaintiff's counsel to demand production of the folder used to prepare the defendant for deposition. Defense counsel refused to identify the documents, arguing that "the select grouping of the documents was attorney work product protected from discovery by Federal Rule of Civil Procedure 26(b)(3)." *Id*. at 314. The court agreed that "the selection process itself represents defense counsel's mental impressions and legal opinions as to how the evidence in the documents relates to the issues and defenses in the litigation." *Id*. at 315. Accordingly, the court concluded that "the selection and

SFI-784374v1

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 7

compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Id.* at 316.

Here, Shionogi's counsel will be doing nothing more than what counsel in *Sporck* (and the other cases referenced herein) did. Shionogi's attorneys are engaged in the "proper preparation of [Shionogi's] case [by] assembl[ing] information [and] sift[ing] . . . the relevant from the irrelevant facts." *See Hickman*, 329 U.S. 495, 510-11 (1947). The documents that will be translated will be selected and compiled "in preparation for pretrial discovery" and to prosecute Shionogi's claims against InterMune. There will be no mass translation as a basis to "cull" significant documents. As such the translated documents fall "within the highly-protected category of opinion work product." *Sporck*, 759 F.2d at 316. In this case, the translation issue is a red-herring. The documents are protected because Shionogi's attorneys used their professional judgment to identify them as central to Shionogi's claims. *Id.*; *see also Shelton v. Am. Motors Corp.*, 805 F.2d at 1329

The cases on which InterMune relies to establish otherwise ignore the essential work product analysis. *Nature's Plus Nordic* relies on *Hajek v. Kumho Tire Co.*, 2010 WL 503044 (D. Neb. Feb. 8, 2010) and *ICE Corp. v. Hamilton Sundstrand Corp.*, 2007 WL 4239454 (D. Kan. Nov. 30, 2007), neither of which address whether the selection of documents is protected work product. Indeed, *Kumho's* entire analysis consists of five sentences – with no citations to precedent or discussion of work product – and is limited to existing translations of documents. In neither case was there an allegation or discussion of attorneys having identified certain documents as integral to the case and having those documents translated. Similarly, *In re Pabst*, relies on *Howes v. Medical Components, Inc.*, 698 F. Supp. 574, 580-81 (E.D. Pa. 1988), a case addressing whether translations created during the prosecution of a patent were protected by the attorney-client privilege. Neither *In re Pabst*, nor *Howes*, apply a work product analysis to determine whether an attorney's identification of significant documents constitutes opinion work product. Instead, both skip directly to the burdens relating to withholding translated documents. InterMune's cases do not conduct a meaningful work product analysis, but rather rely on inapplicable cases to reach their conclusions.

The only circuit decision InterMune has cited that criticizes *Sporck* – *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007 (1st Cir. 1988) – does not warrant ignoring established Ninth Circuit law relating to document compilations. *Sporck* is regarded as the "seminal case on the work product status of documents culled from a larger collection." *Disability Rights Council of Greater Wash. v. Wash. Metro. Transit Auth.*, 242 F.R.D. 139, 142

SFI-784374v1

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 8

(D.D.C. 2007); *see also Miller v. Holzmann*, 238 F.R.D. 30, 31 (D.D.C. 2006). *San Juan's* limited and case-specific criticism of *Sporck* is not applicable here.[6]

>   **(3)    Even if the Court Finds that Counsel's Selection and Compilation of Documents is Ordinary Work Product, InterMune Has Failed to Show that the Selected Documents Should Be Produced**

InterMune relies on *In re Air Crash Disaster Near Warsaw, Poland on May 9, 1987*, 1996 WL 684434 (E.D.N.Y. Nov. 19, 1996), for the proposition that counsel's selection of documents to translate does not constitute opinion work product. But, *In re Air Crash* is not analogous to the circumstances here. In *In re Air Crash*, the documents counsel had translated "were not selected with any specific task in mind." *Id.* at *2. In contrast, the documents here will be selected specifically by counsel as those most likely to be relevant to Shionogi's prosecution of its claims. Unlike *In re Air Crash*, the translations at issue here will be opinion work product.

Even if the Court finds that counsel's selection of documents for translation is "ordinary" work product, production of these documents remains inappropriate. "Ordinary" work product is discoverable only upon a showing of substantial need and undue hardship. *See Id.* at *1; *see also* Fed R. Civ. P. 26(b)(3). InterMune cannot show either. In *In re Air Crash*, the court found that the propounding party had established substantial need and undue hardship, because without being provided the requested translations, the party would have to hire its own translators. *Id.* at *2. The court found that such an outcome would "needlessly prolong discovery and [] not protect any privileged information." *Id.*

In contrast, InterMune will have access to machine translation tools not available in 1996 (when *In re Airline* Crash was decided), will presumably hire its own bilingual reviewers, and will undoubtedly translate many documents, regardless of whether Shionogi is ordered to produce the requested documents. As such, there is no undue burden – InterMune will translate documents with or without production of the contested translations. Indeed, InterMune does not dispute that it will retain its own bilingual attorneys to review the production. These reviewers will likely review every document that is produced in Japanese, regardless of whether an English translation is provided as well. Accordingly, InterMune has access to both human resources and

---

[6] In *San Juan*, the First Circuit overturned a district court's discovery order that required counsel to disclose to the opposition all documents counsel planned to use in each deposition. The First Circuit held that *Sporck*'s logic was inapplicable to the facts of *San Juan*. The First Circuit explained that unlike the documents compiled in *San Juan*, the attorney's selection of documents in *Sporck* "was never designed to see the light of day; the exhibits had been selected not for use in examination of an adverse or neutral witness, but for a markedly more private purpose – preparation of the attorney's own client." *In re San Juan*, 859 F.2d at 1018. Because the documents in *San Juan* were selected for the specific purpose of disclosure during the deposition, the First Circuit found *Sporck* inapplicable.

SFI-784374v1

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 9

technological advancements that will greatly ease the burden of whatever small portion of translation is ultimately needed.

While Shionogi acknowledges some limited efficiency benefits of only having documents translated once, this slight benefit is far outweighed by the policy concerns underlying the attorney work product doctrine. The work product doctrine lies at the heart of our legal system, and protects against "[i]nefficiency, unfairness and sharp practices [that] would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing and the interests of the clients and the cause of justice would be poorly served." *Hickman*, 329 U.S. at 511. The balance simply does not tip in InterMune's favor.

Finally, no overall efficiency will be achieved by requiring production of translations requested by counsel prior to production. If such a requirement were to be imposed, it would encourage counsel to delay the creation of written translations until after production and to more heavily rely on Japanese-speaking counsel. Such a process would be unwieldy, expensive and contrary to the mandate of Rule 1 that the federal rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

### (B) Shionogi's Conclusion

Shionogi is willing to meet and confer regarding the use of translations in proceedings such as depositions, motions and trial, and believes an efficient and economical process for translated documents is possible. For example, the parties may agree to use a single translation service to avoid dueling translations or questions about qualifications. Such a process is a far-cry from the unilateral disregard for Shionogi's work product at the outset of the litigation.

### II. InterMune's Position

Shionogi's lengthy discourse on general principles of work product protection obscures a simple fact: the cases that actually apply those principles to the narrow question now before the Court do not support the result Shionogi seeks. Indeed, as discussed below, *every case* to decide the specific question presented here—*i.e.*, whether translations prepared at the document review stage of litigation may be withheld as work product—has required the translations at issue to be produced. Shionogi has not cited, and InterMune is not aware of, any case in which a court held that a party may withhold such initial-stage translations.

To be clear: InterMune does not propose that either party be obligated to *create* a translation that does not exist at the time of production, but only that if a party has already translated a document at the time of production it should produce the translation together with

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 10

the original. As courts have repeatedly found, producing such translations is a practical and common-sense way to help reduce the burdens of discovery, which is InterMune's goal. Shionogi's only response to this obvious efficiency is revealing. Shionogi warns that if it does not get its way on withholding translations, it will game the system by "delay[ing] the creation of written translations until after production." *See supra* Part I(A)(3). And, indeed, the document review protocol that Shionogi has now described for the first time in this submission appears to do just that. Shionogi has gone out of its way to design a review and production process that largely excludes its own "litigation team" in order to avoid facilitating InterMune's review of its documents. At the same time, Shionogi has purported to reserve the right to change this process in its entirety after the Court rules on the present dispute. It is Shionogi's approach here—not InterMune's—that is inconsistent with the principles of Rule 1, which makes it no surprise that Shionogi's approach has been universally rejected.

### (A) Translations Made in the Initial Stage of Litigation Are Not "Opinion" Work Product Under Fed. R. Civ. P. 26(b)(3)(B).

Translations made in the initial "screening" phase of document collection and production are not opinion work product governed by Rule 26(b)(3)(B). InterMune readily agrees that the selection and compilation of documents by counsel *can* be opinion work product in appropriate circumstances. The circumstances at issue here, however, do not warrant such protection.

Shionogi argues as if the selection and compilation of documents by counsel is always shielded as opinion work product and contends that InterMune seeks an "exception" to this supposedly firm rule. That is not so. As explained in one of the cases on which Shionogi relies: "Not every selection and compilation of third-party documents by counsel transforms that material into attorney work product." *In re Grand Jury Subpoenas*, 318 F.3d 379, 386 (2d Cir. 2003). Rather, "the party asserting the privilege must show a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents." *Id.* (ordering the production of the documents at issue).

At this early stage of this litigation, disclosure of the translations at issue does not present any such "real" concern. Discovery in this case is still in its infancy. A mere two weeks ago, when the parties were before the Court to discuss whether foreign-language documents should be reviewed by U.S.-admitted lawyers, Shionogi said that it was "at a very early stage where [it is] just now assembling a team of [document] reviewers." *See* ECF No. 35 (Transcript of Proceedings) at 10:4-6. Although Shionogi now says that it started reviewing documents one week before the conference, that does not change the fact that discovery has just begun. Shionogi has yet to serve responses to InterMune's discovery requests (the deadline for which InterMune agreed to extend at Shionogi's request), and the parties are still actively negotiating

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 11

preliminary discovery issues such as search terms and custodian lists. It is up to Shionogi if it wishes to begin reviewing documents before the meet-and-confer process, thereby incurring the risk that it will need to duplicate this effort when the scope of discovery is more well-established. But the decision to proceed in this manner should not allow Shionogi to cloak its translations with an unprecedented work product protection.[7]

Courts have consistently rejected Shionogi's argument that translations prepared in connection with the document review process warrant protection as opinion work product. For example, in *In re Air Crash Disaster Near Warsaw, Poland*, No. MDL 787, 1996 WL 684434, at *2 (E.D.N.Y. Nov. 19, 1996), the court held that "[c]ounsel's choice of which documents to translate reflects only what documents [defendant's] attorneys considered worth reading. Plaintiffs' attorneys would be hard pressed to glean [opposing counsel's] specific trial strategy or mental impressions of the case from such a broad selection of documents." *Id*. Other courts to consider the issue have agreed. *See Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 274 F.R.D. 437, 439 (E.D.N.Y. 2011) ("[T]ranslations prepared in the course of general discovery [are] not entitled to the protection given to opinion work product.").

Likewise, in *Plant Genetic Sys., N.V. v. Northrop King Co.*, 174 F.R.D. 330 (D. Del. 1997), the court expressly considered the stage of the litigation, stating: "The question before the Court revolves around when the protected selection occurs, that is, at what point in the process does a selection of documents by counsel reveal a trial strategy?" *Id.* at 332. It held that English-language summaries of foreign language documents made as "part of a culling process" in the course of document review were required to be produced. This holding was based on a finding that production would not "reveal [counsel's] understanding of the case, but that it will add some efficiency to the normally complex and inefficient discovery process." *Id*. While the court did observe in dicta that work product would protect a much smaller set of full-length translations that the party "consider[ed] important enough to be translated into English for the benefit of the Court or a jury," *id.*, Shionogi cannot and does not contend that its translation plans are so limited. Counsel could not responsibly decide at this early stage of the case which documents are important enough to provide to the Court or a jury.

The cases on which Shionogi relies address later stages in the litigation process in which documents are selected for far more specific purposes, and thus bear a more meaningful risk of revealing counsel's mental impressions. For example, Shionogi's key case, *Sporck v. v. Peil*, 759 F.2d 312 (3rd Cir. 1985), involved counsel's selection of the documents used to prepare a witness for deposition. Witness preparation materials are a tailored set of documents selected for

---

[7] Shionogi's assertion that InterMune has not been "complying with its discovery obligations" is far outside the scope of this letter briefing, and it is without basis. *See supra* note 4. InterMune has been diligently working to address and respond to the disproportionately extensive discovery requests that Shionogi has served. The parties continue to meet and confer on these issues, as recently as today.

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 12

an express and limited purpose, curated by counsel to address specific issues relevant to the witness. Their disclosure could thus give a roadmap to counsel's thoughts and strategy regarding the witness's testimony. But courts have frequently cautioned against extending the rationale of *Sporck* too far. "*Sporck* ruled on the 'opinion' status of a specific type of compilation. At issue in there [sic] was the compilation of a small number of very select documents . . . , and the selectivity of that compilation was a key factor in the Third Circuit's reasoning." *Washington Bancorporation v. Said*, 145 F.R.D. 274, 277 (D.D.C. 1992); *see In re Trasylol Prods. Liab. Litig.*, 2009 WL 936597, at *3 (S.D. Fla. Apr. 7, 2009) ("Cases that have considered issues similar to those presented in *Sporck* . . . have demonstrated a good deal of disagreement as to the application of such a 'selection-based opinion work-product' privilege, and the result has been the production of a multitude of distinguishing principles."); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1018 (1st Cir. 1988) (finding the reasoning of *Sporck* to be "flawed").

By contrast to witness preparation materials, production of the various translations that wind up getting prepared during the document review process would not reveal anything about counsel's views of the case. It will not be apparent to InterMune *why* a particular document was translated, *e.g.*, whether it was randomly selected for quality control, whether a translation was needed to make a responsiveness determination, or for some other reason. Any documents that are translated because Shionogi believes that they are "Hot" will be subsumed within the much broader set. Moreover, by definition, at the time a document is selected for translation, counsel will not yet even have read the document, much less formed a view as to how to use it in the litigation. The net will be cast far more widely for translations during document review, as counsel is still learning about the case, than for the compilation of witness preparation materials or other specific litigation tasks.[8]

Shionogi ignores the context in which counsel's selection of documents occurs, and it applies *Sporck* uncritically to these very different situations. Where courts have expressly considered *Sporck*'s application to translations made during document review, they have held that the protections of Rule 26(b)(3)(B) do not apply. *See, e.g.*, *Plant Genetic*, 174 F.R.D. at 439 ("The Court is not persuaded that the instant dispute is covered by the umbrella of *Sporck* . . . ."); *Air Crash*, 1996 WL 684434, at *2 (distinguishing *Sporck*).[9] Shionogi's other cases also address far narrower "selections" of documents by counsel at later stages in the litigation. *See Shelton v. American Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986) (involving questions asked at

---

[8] This is confirmed by Shionogi's stated preference not to "heavily rely on Japanese-speaking counsel" prior to production. *See supra* Part I(A)(3).

[9] Shionogi's effort to distinguish *Air Crash* on the ground that the translated documents at issue there were "not selected with any specific task in mind," *see supra* Part I(A)(3), is unavailing. The court's point, as the full context makes clear, is that unlike in *Sporck*, which *Air Crash* expressly distinguished, the documents at issue were not selected by counsel for the purpose of a specific litigation task like witness preparation but instead as part of "general discovery." 1996 WL 684434, at *2. So too here, where the litigation has just begun.

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 13

deposition of opposing counsel that would have revealed the documents counsel "has selected as important to her legal theories concerning this case"); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982) (involving a binder of documents used to prepare a witness for deposition). The principles underlying those cases have not been, and should not be, stretched to cover translations made in early-stage document review.

The only other case Shionogi has cited that even deals with translations, *Fleischmann v. McDonald's Corp.*, 244 F.R.D. 434 (N.D. Ill. 2007), is of no assistance to its argument regarding opinion work product. The court in *Fleischmann* did not find that—or even address whether— the documents at issue were opinion work product. To the extent the decision sheds any light as to the court's thinking on that issue, it strongly suggests that the court rejected that claim because it favorably cited *Air Crash*, which held that translations prepared during "general discovery" were not opinion work product. 244 F.R.D. at 440. More important, like Shionogi's other cases, *Fleischmann* has nothing to do with translations made during the document review process. The translations at issue there were nine specific documents that counsel for McDonald's had translated in the course of its internal investigation and analysis of litigation in Brazil involving a Brazilian subsidiary. *See id.* When those translations were subsequently sought in U.S. litigation, McDonald's put those nine pre-existing documents on its privilege log and claimed work product protection. *Fleischmann* has nothing to do with translations prepared in the course of a document review process.

There is no case, in any Circuit or District, that extends Rule 26(b)(3)(B) as far as Shionogi wants to extend it. To explain the lack of precedent for its position, Shionogi asserts that its document review process is different from what has been seen in prior cases regarding translations prepared in connection with document review. There are several problems with this argument. To begin with, Shionogi has not committed to this approach but instead reserves the right to "modify this process" in whatever manner it likes. *See supra* Part I(A)(1), note 2. Shionogi should not be permitted to play bait-and-switch after the Court rules on this issue. And there is substantial reason to believe that the process will indeed be "modif[ied]." At the case management conference, Shionogi resisted being required to use U.S.-admitted lawyers for document review, claiming that it wanted to preserve flexibility. ECF No. 35 (Transcript of Proceedings) at 10:1-9. It admits in this submission that it would prefer not to "heavily rely on Japanese-speaking counsel." *See supra* Part I(A)(3). But that is exactly what Shionogi now claims to be doing. As currently described by Shionogi, the "U.S.-based litigation team" at Jones Day will not see any documents before production except a *subset* of those deemed "Hot." In other words, Shionogi asserts that it intends to follow a process in which its counsel will be producing "Hot" documents to InterMune before the "litigation team" even reads them. Further, as Shionogi describes the process, the "litigation team" will not review documents to perform quality control checks of the production (or of documents flagged as not responsive and not produced); the "litigation team" will not review documents to assist in making judgments about

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 14

responsiveness; and the "litigation team" will not review documents to assist in making judgments about privilege. All of those tasks fall instead to the "second-level review team." These gymnastics—newly revealed by Shionogi for the first time two days ago—make little sense as a process for ensuring the quality of production or for preparing to litigate the case. They instead appear designed to do what Shionogi has threatened: to "delay the creation of written translations" in order to avoid having to produce the translations to InterMune. That conduct should not be rewarded with a blanket exclusion of all translations from production, even if Shionogi should revert to a less tortured process.[10]

In any event, the process Shionogi describes is not so different from the precedents that it warrants a different result. There will obviously need to be "culling" of the "millions of pages" that Shionogi has identified as potentially relevant. As a practical matter, that will have to involve the "U.S.-based litigation team" in a number of ways. Shionogi acknowledges that its reviewers will prepare English-language summaries of certain documents.[11] Where there are close judgment calls about responsiveness or privilege, the "litigation team" will need to be involved in reviewing the document, which will require translation. Exercising oversight over the review of "millions of pages" will also require some amount of translation for the "litigation team." In addition, Shionogi acknowledges that there will be documents that were previously translated for reasons wholly unrelated to this litigation. Disclosure of this wider set of translations is in no sense comparable to disclosing a set consisting solely of "Hot" documents or a binder assembled for witness preparation. Production of the translations at issue will not reveal which documents Shionogi's counsel plans to use in motions, in depositions or at trial; indeed, at this stage, those are judgments that counsel will likely not yet have made. The reasons why a

---

[10] InterMune expects Shionogi to abide by the Court's request for "transparency" regarding its review protocol. ECF No. 35 (Transcript of Proceedings) at 10:12-16. Indeed, had Shionogi not waited until two days ago to inform InterMune of its review process, the Court may have been spared some of the parties' disputes. InterMune has been raising these issues since the Rule 26(f) conference on September 18, 2012. Only after being pushed has Shionogi decided (at least for now) to use U.S.-admitted lawyers for its document review, as InterMune had long requested.

[11] As noted above, in *Plant Genetic*, such English-language summaries were required to be produced, even though summaries were prepared for only 3.2% of the documents that were reviewed. See *Plant Genetic Sys.*, 174 F.R.D. at 321. If Shionogi uses such summaries as part of its "culling" process, there is no reason they should be excluded from production here. Furthermore, should Shionogi engage in mass translation of documents after production, those translations would be subject to discovery too. Translations made after production of the original documents are not automatically work product simply based on *when* the translations were made. It is also relevant *why* the translations were made, *i.e.*, whether made as part of a screening or culling process. Contrary to Shionogi's characterization, *see supra* note 5, there is nothing "eleventh hour" about InterMune's position. As noted above, the "eleventh hour" development here was Shionogi's decision two days ago to share the details of its review process that InterMune had long been seeking.

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 15

document may be translated at this early stage are so varied, and in many instances so prosaic, that little, if any, "selection and compilation" will be apparent.[12]

### (B) InterMune Has a Substantial Need for Translations in Shionogi's Possession and Failure to Produce Them Would Subject InterMune to Undue Hardship

Shionogi argues that even if translations prepared during the document review process are not "opinion" work product, they should still be withheld as "ordinary" work product. Courts have repeatedly rejected this argument too. "Notwithstanding arguments of work product, courts have concluded that if a responding party to discovery has translations to [certain] foreign documents produced, then it must produce the translated documents as well." *Nature's Plus*, 274 F.R.D. at 439 (citing cases); *see also In re Papst Licensing GmbH Patent Litig.*, No. Civ. A. 99-MD-1298, 2001 WL 797315, at *24 (E.D. La. 2001) ("[T]ranslated documents are discoverable, even where the translations are merely summaries or selected portions of the original foreign language documents.").

Even if the translations were "ordinary" attorney work product under Rule 26(b)(3)(A), they could not be withheld. Such work product must be produced when the party seeking its production "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent." F.R.C.P. 26(b)(3)(A)(ii). InterMune "has a substantial need to also have any existing translations in order to understand the content of the documents." *Nature's Plus*, 274 F.R.D. at 440. And "to force" InterMune "to have to translate documents already translated would cause an undue hardship." *Id.* While it is true that InterMune could hire its own translators to "review and translate selected documents, such a requirement would needlessly prolong discovery and does not protect any privileged material." *Air Crash* 1996 WL 684434, at *2. As the court held in *Plant Genetic*, production of translations prepared in the "culling" process of document review will "help[] this dispute toward a speedy and inexpensive resolution." 174 F.R.D. at 332.

It is no answer to say, as Shionogi does, that times have changed and that the availability of machine translations leads to a different result. *Nature's Plus* was decided just last year. And Shionogi does not identify any court that has ever found machine translations to tip the balance in favor of affording work product protection. The fact is that machine translation technology has progressed slowly, and quality "is still far from satisfactory." Chunyo Kit & Tak Ming Wong, *Comparative Evaluation of Online Machine Translation Systems with Legal Texts*, 100:2 Law Libr. J. 300, 320 (2008). That is particularly true for the documents at issue in this case. Machine translation systems' "performance on the three Asian languages: Chinese, Japanese,

---

[12] Shionogi's contention that InterMune's proposal is "practically unworkable" is without basis. If a document has been translated in connection with the process of identifying documents for production, the English-language version should be produced.

SFI-784374v1

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 16

and Korean, involved in our evaluation, are remarkably poorer than that on other languages." *Id.* at 316. Furthermore, machine translation is particularly unreliable when dealing with "lengthy and complex sentences with unusual word order" and subject matters with specialized terminology such as the scientific, clinical and regulatory issues in this case. *Id.* at 305. Whatever the limited utility of machine translation could theoretically be in a run-of-the-mill case, a case involving Japanese-language documents relating to clinical studies of a drug used to treat a rare lung disease is not the place to break new ground. Shionogi obviously agrees, or else it would not be hiring bilingual reviewers to process the documents and commissioning human translations for further study. Withholding from InterMune any translations prepared through the document review process would serve no purpose except to impose a large and unnecessary burden on InterMune.

### (C) InterMune's Conclusion

As the party "seeking to invoke the work product doctrine," Shionogi "bears the burden of establishing all the requisite elements, and any doubts regarding its application must be resolved against the party asserting its protection." *In re the Application of the Republic of Ecuador*, 280 F.R.D. 506, 514 (N.D. Cal. 2012). Shionogi cannot meet that burden here. Translations made as an incident to the document review process are not protected work product, and even if they were, that protection would be overcome. InterMune requests that the parties be required to produce any translations of foreign-language documents in their possession, custody or control at the time that the original underlying document is produced.

Sincerely,

| JONES DAY | CRAVATH, SWAINE & MOORE |
|---|---|
| By: /s/ Jason McDonell<br>　　Jason McDonell | By: /s/ Gary A. Bornstein<br>　　Gary A. Bornstein |
| Attorneys for Plaintiff<br>SHIONOGI & CO., LTD. | Attorneys for Defendant<br>INTERMUNE, INC. |

SFI-784374v1

JONES DAY

The Honorable Magistrate Judge Elizabeth D. Laporte
November 28, 2012
Page 17

## Civil L.R. 5(i)(3) Attestation of Concurrence of Signatures

I, Jason McDonell, am the ECF user whose identification and password are being used to file this Joint Letter Brief. Pursuant to Civil L.R. 5(i)(3), I hereby attest that Gary Bornstein, counsel for Defendant, has concurred in the filing of this document.

Dated: November 28, 2012                JONES DAY

                                                   By: /s/ Jason McDonell
                                                       Jason McDonell

                                                     Attorneys for Plaintiff
                                                     SHIONOGI & CO., LTD.

SFI-784374v1